## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAYAN ANGULO, CAMERON PILLE, JANINA SALORIO, and XANDER BLACK, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> CLOWNS.COM, INC., ADOLPH RODRIGUEZ a/k/a George Rodriguez a/k/a George Adolph Rodriguez a/k/a George Blackstone, and ERICA BARBUTO, <br><br> *Defendants*. | Civ. Action No.: 23-cv-10983 <br><br> **COLLECTIVE & CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiffs Brayan Angulo, Cameron Pille, Janina Salorio, and Xander Black, individually and on behalf of all others similarly situated, by their undersigned attorneys Kakalec Law PLLC, for their Complaint, allege as follows:

### INTRODUCTION

1.     Worker misclassification is no laughing matter. Misclassification of employees as independent contractors purports to deny those employees the full protections of our state and federal wage-and-hour laws, workplace safety protections, and the safety nets of unemployment insurance and workers' compensation.

2.     But Defendants Clowns.com, Inc., Adolph Rodriguez, and Erica Barbuto have flagrantly and systematically violated those laws, misclassifying Plaintiffs Brayan Angulo, Cameron Pille, Janina Salorio, and Xander Black ("Plaintiffs") and dozens of other similarly situated individuals working as clowns and children's entertainers as independent contractors—

1

when, in reality, Plaintiffs and others similarly situated were employees of Clowns.com, Inc., Adolph Rodriguez, and Erica Barbuto ("Defendants").

3.      Relying on this misclassification, Defendants failed to pay Plaintiffs overtime premiums for hours worked above forty in a workweek, in violation of the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL").

4.      Further relying on this misclassification, Defendants failed to pay Plaintiffs for all of their work time, not paying them at all for their time traveling from Defendants' headquarters to children's parties, and between parties, in flagrant violation of the NYLL.

5.      Defendants also promised Plaintiffs wages of $25 per hour worked, but only paid them for the time they actually spent performing at children's parties, and not for time spent traveling from headquarters to parties or between parties, in violation of the NYLL.

6.      Finally, Defendants routinely made deductions from Plaintiffs' wages which were not permitted or authorized under the NYLL, and failed to provide Plaintiffs with required wage notices or wage statements under the NYLL.

7.      Plaintiffs now bring this action on behalf of themselves and other similarly situated individuals who worked for Defendants as clowns and children's entertainers and were misclassified, or continue to be misclassified, as independent contractors and were not paid as required under federal and state law.

8.      Ms. Pille also brings a claim for illegal retaliation under the NYLL, and Ms. Salorio brings a claim for tortious interference with contract against Mr. Rodriguez.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over Plaintiff Angulo's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and the FLSA, 29 U.S.C. § 201 *et seq.*

10.     The Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction), as they form part of the same case or controversy as Plaintiffs' federal claims.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, as Plaintiffs regularly worked at, and traveled between, parties in Manhattan and the Bronx.

## THE PARTIES

12.     Plaintiff Brayan Angulo is a resident of New York State who worked for Defendants as a clown/children's entertainer from approximately February 2018 to April 2020, and then again from approximately January 2022 to November 2022.

13.     Plaintiff Cameron Pille is a resident of New York State who worked for Defendants as a clown/children's entertainer from approximately July 2022 to May 6, 2023.

14.     Plaintiff Janina Salorio is a resident of New York State who worked for Defendants as a clown/children's entertainer from approximately January 2018 to March 2020.

15.     Plaintiff Xander Black is a resident of New York State who worked for Defendants as a clown/children's entertainer from approximately October 2018 to March 2020.

16.     Clowns.com, Inc. ("Clowns.com") was, until approximately December 2022, a New York corporation with its principal office at its warehouse located at 200 Meacham Ave in Elmont, New York.

17.     According to the New York Secretary of State's records, the New York corporation was "merged out of existence" on December 23, 2022.

18.     Beginning on December 22, 2022, Clowns.com was registered as a Florida corporation, according to records from the State of Florida's Division of Corporations.

19.     On its website, Clowns.com continues to list its headquarters as 200 Meacham Ave, Elmont, NY 11003.

20.     Defendant Adolph Rodriguez ("Rodriguez"), also known by the names George Rodriguez, George Adolph Rodriguez, and George Blackstone, is an individual who resides in New York State.

21.     Defendant Erica Barbuto ("Barbuto") is an individual who resides in New York State.

22.     Rodriguez and Barbuto own Clowns.com.

23.     At times relevant to this action, Rodriguez has served as Chief Executive Officer and/or President of Clowns.com.

24.     At times relevant to this action, Barbuto has served as President of Entertainment of Clowns.com.

25.     Rodriguez and Barbuto have the authority to determine the compensation of Plaintiffs and other similarly situated clowns and children's entertainers employed by Clowns.com, and have exercised that authority.

26.     Rodriguez hires, disciplines, and terminates employees of Clowns.com, and has hired, disciplined, and terminated employees of Clowns.com at times relevant to this action.

27.     Barbuto schedules employees of Clowns.com, approves time-off requests, and handles payroll and other human resources concerns, and has approved time-off requests, and has handled payroll and other human resources concerns at times relevant to this action.

28.     Rodriguez and Barbuto act and have acted directly and indirectly in the interests of Clowns.com in relation to Plaintiffs, and in relation to other similarly situated clowns and

children's entertainers employed by Clowns.com, and regulate/has regulated the terms and conditions of Plaintiffs, and of other clowns and children's entertainers employed by Clowns.com.

29.     At all times relevant to this action, Rodriguez and Barbuto were employers of clowns and children's entertainers employed by Clowns.com within the meaning of the FLSA and the NYLL.

30.     At all times relevant to this action, each Defendant was an "employer" of Plaintiffs and similarly situated clowns and children's entertainers within the meaning of the FLSA and the NYLL.

31.     At all times relevant to this action, Plaintiffs and similarly situated clowns and children's entertainers were non-exempt "employees" of Defendants as defined by the FLSA and the NYLL.

32.     At all times relevant to this action, Defendants "employed" Plaintiffs and similarly situated clowns and children's entertainers within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

33.     Clowns.com is a party services company that has been in the business of providing clowns, children's entertainers, and related party services for children's birthday parties and other events for over fifteen years.

34.     Defendants Rodriguez and Barbuto direct Clowns.com's business and operations.

35.     Defendants provide party services throughout New York, New Jersey, and Connecticut.

36.     Customers contact Defendants to book clowns and other children's entertainers to appear at birthday parties, and other parties/events, hosted for children.

37.    While Defendants' primary service is providing clowns for children's parties, Defendants also provide other types of children's entertainers, including entertainers who perform as cartoon characters (such as Scooby Doo and Hello Kitty), princesses (such as Elsa, Belle, and Jasmine), magicians, and superheroes (such as Batman, Black Panther, and Wonder Woman).

38.    Defendants also provide entertainers who dress as seasonally-themed characters for parties during the winter holidays, including Santa Claus, Frosty the Snowman, Rudolph the Red-Nosed Reindeer, Olaf, Christmas Elves, and Dreidels.

39.    These character-specific entertainers are typically accompanied at parties and events by a clown as well.

40.    But despite the fact that Defendants' primary business is providing party clowns and other children's entertainers to children's parties, and that these clowns and entertainers are integral to Defendants' business, Defendants misclassified and continue to misclassify the clowns and entertainers as independent contractors, denying them the benefits of employment status.

41.    Defendants recruited and continue to recruit actors using a variety of online platforms, including Backstage, Playbill, Actors Access, and Indeed, to work as clowns and other children's entertainers, promising them (in these advertisements) wages of $25 per hour.

42.    Defendants do not require the actors (mostly young) that they hire to have any specific professional training or skill related to clowning.

43.    New clowns and entertainers must fill out an employment application to work for Clowns.com.

44.    Defendants required all clowns and entertainers they hire to go through mandatory training in clowning, and to specifically be trained on the "Clowns.com Package Show."

45.     This included training on specific magic tricks, specific jokes, specific rabbit-handling actions, and specific actions with other equipment.

46.     During this training period, Plaintiffs and other newly-hired clowns and entertainers were taught by experienced clowns how to do face-painting, make balloon animals, perform magic tricks, and other clowning-related skills.

47.     Plaintiffs and other clowns and entertainers also were taught how to use Defendants' equipment and animals.

48.     Plaintiffs and other clowns and entertainers were not free to decide how to perform for children in any manner that they wished. Instead, Plaintiffs and other clowns and entertainers were taught a carefully choreographed party routine, with specific roles assigned to men and women.

49.     For example, clowns and entertainers who were men were required to make balloon animals and cotton candy, while women were required to paint children's faces, handle the rabbit, and lead games with the kids. Men and women were required to carry specific equipment based on gender. In addition, women were also required to collect the balance due to Defendants for the party and any tips.

50.     During this training period, Plaintiffs and other newly-hired clowns and entertainers were required to "shadow" other clowns, appearing at parties and other events with them.

51.     During this training period, Plaintiffs and other new clowns and entertainers were paid a reduced pay rate of $20 per 60-minute party, not the $25 per hour rate Defendants advertised and promised.

52.     To be paid at the $25 per hour advertised rate, Plaintiffs and other clowns and entertainers had to "graduate" from Clowns.com training by completing a time trial for each skill taught, as well as performing a full magic show in under twenty minutes.

53.     Plaintiffs and other clowns and entertainers were not in business for themselves.

54.     Defendants directed the details of Plaintiffs' work, and of other clowns and entertainers' work.

55.     Defendants set the schedules of Plaintiffs and other clowns and entertainers, assigning them specific workdays and parties to entertain at.

56.     Plaintiffs were not free to decide when to work, where to work, or at which parties to work.

57.     Generally speaking, Plaintiffs and other clowns and entertainers were expected to be available to work every weekend, and are penalized if they try to take weekends off.

58.     In addition, as another example, in 2022, according to Defendants' "onboarding" document, Defendants designated certain dates as "blackout days" that Plaintiff Pille and other clowns and entertainers were "not allowed under any circumstances to request off."

59.     During those days, Plaintiff Pille and other clowns and entertainers were told in the "onboarding" document that they were "required to be present unless there is an emergency, which we will ask for documentation to be provided."

60.     Plaintiff Pille and other clowns and entertainers were told in the "onboarding" document that these official "blackout days" were March 16-17, 2022, March 20, 2022, all weekend days in May 2022, June 4-5, 2022, June 11-12, 2022, October 29-31, 2022, the first three weekends of December 2022, and December 18-26, 2022.

61.     In addition, Defendants maintained a strict policy governing time off in 2022, as articulated in the "onboarding" document, which required that all requests be made three weeks before the requested day off absent a medical or family emergency.

62.     Defendants set the pay of Plaintiffs and other clowns and entertainers.

63.     Defendants provided Plaintiffs and other clowns and entertainers with uniforms, including costumes and wigs for specific characters, that they are required to wear at all events they work at.

64.     Defendants provided Plaintiffs and other clowns and entertainers with all equipment needed to do their jobs, including vehicles, costumes, balloon pumps, cotton candy machines, face-painting paint and brushes, iPods with speakers to play specifically-chosen music, and live rabbits.

65.     Defendants also provided Plaintiffs with other add-on party equipment and supplies including bounce houses, mascot character costumes, and other equipment and supplies.

66.     Defendants required clowns and entertainers to report to the Clowns.com warehouse at 200 Meacham Avenue in Elmont, New York at the beginning of each workday to pick up all necessary equipment for the day's parties.

67.     The work days of Plaintiffs, and the other clowns and entertainers, began when they reported to the Elmont warehouse.

68.     Defendants then required clowns to drive, or ride with another clown, in a Clowns.com vehicle to their first assigned parties.

69.     Despite their advertised promise of a $25 per hour pay rate, Defendants did not pay Plaintiffs and similarly situated clowns and entertainers at all for many of the hours they worked.

70.     Instead, Defendants only paid Plaintiffs and other clowns and entertainers for the time they were scheduled to entertain at parties/events.

71.     Instead of paying Plaintiffs and other clowns and entertainers a $25 per hour pay rate as promised, Defendants paid Plaintiffs a per scheduled party-hour rate, which was typically $25.

72.     Defendants did occasionally raise the pay rates of Plaintiffs and other clowns and entertainers from the initial advertised wages. For example, in 2022, Plaintiff Angulo was earning $30 per party-hour.

73.     Defendants did not pay Plaintiffs and other clowns and entertainers for the time spent at the warehouse gathering and loading equipment and supplies into vehicles.

74.     Defendants did not pay Plaintiffs and other clowns and entertainers for the time spent traveling to their first parties.

75.     Defendants did not pay Plaintiffs and other clowns and entertainers for the time spent traveling between parties.

76.     Defendants also did not pay Plaintiffs and other clowns and entertainers for additional time if the parties were actually longer than they were scheduled for.

77.     After their parties were done for the day, Defendants required Plaintiffs and other clowns and entertainers to travel back to the warehouse to return the cars, and return and unload the equipment they were using.

78.     But Defendants did not pay Plaintiffs and other clowns and entertainers for the time spent traveling from their last parties back to the warehouse to return the cars and equipment.

79.     Defendants also did not pay Plaintiffs and other clowns and entertainers for time spent unloading the equipment, or for time spent waiting for and then completing their nightly "check-out."

80.     During check-out, Plaintiffs and other clowns and entertainers gave Defendants cash payments that they had collected from customers during the work day, then waited while Defendants accounted for the day's payments from customers (whether in cash or Venmo) and gave them their pay after any deductions (as discussed further below).

81.     Plaintiffs and other clowns and entertainers would tell Defendants what they believed their take-home pay should be, but if Defendants disagreed, there was no way for Plaintiffs to effectively challenge Defendants' determination.

82.     Sometimes, Plaintiffs and other clowns and entertainers had to wait many minutes, or even more than an hour, to be checked out if there were other clowns and entertainers ahead of them in the check-out line.

83.     As a result, Plaintiffs and other clowns and entertainers worked for many hours without any pay at all, and not the promised $25 per hour rate.

84.     Because of Defendants' pay scheme, Plaintiffs and other clowns and entertainers would earn the same pay for working one 4-hour party that they would for working four 1-hour parties, even though the latter required significant work time traveling between parties, and thus took Plaintiffs hours long to complete.

85.     In addition, Defendants did not pay Plaintiffs and similarly situated clowns and entertainers the overtime premium rate for all hours worked over forty in a workweek.

11

86. For example, in the week ending May 29, 2023, Mr. Angulo worked both weekend days and several days during the week, for more than 40 hours. But Defendants did not pay him any overtime premium rate for the hours worked over forty.

87. In addition, every weekend day worked, Defendants required Plaintiffs and other clowns and entertainers to pay Defendants between $5 and $10 a day, by deducting these amounts from their pay. Generally speaking, Defendants required Plaintiffs to pay $10 on Saturdays and $5 on Sundays.

88. Defendants gave varying explanations for these pay deductions.

89. Sometimes, Defendants claimed that these deductions were for Plaintiffs' rental and use of Defendants' equipment.

90. At other times, Defendants claimed that these deductions were to pay for equipment insurance.

91. Defendants would also regularly deduct any parking tickets Plaintiffs and other clowns and entertainers had incurred (for example, if they were late getting back to their car if a party went longer than scheduled) from the pay of Plaintiffs and other clown and entertainers.

92. Defendants would also sometimes make other deductions for specific new equipment purchased for them, equipment that was not optional.

93. For example, in 2019 Defendants purchased new shoes, allegedly for the clowns and entertainers' use. But the new shoes were cheaply made and uncomfortable, so several of the Plaintiffs did not accept or wear them. Nevertheless, Defendants deducted the cost of the shoes from the pay of Plaintiffs and other clowns and entertainers.

94. These pay deductions were not permitted by the New York Labor Law.

95.     These pay deductions were not authorized in writing by Plaintiffs and other clowns and entertainers.

96.     Defendants routinely paid Plaintiffs and other clowns and entertainers in cash, or through Venmo or Zelle.

97.     Defendants did not furnish Plaintiffs and other clowns and entertainers with wage notices at the time of hiring that contained all the information required by New York Labor Law § 195(1).

98.     As a result, Plaintiffs and other clowns and entertainers were not informed of their right to be paid an hourly wage for all hours worked, or their right to overtime compensation, among other things, and were thus deprived of information that could be used to challenge and prevent the theft of their wages.

99.     Defendants did not furnish Plaintiffs and other clowns and entertainers with statements with each payment of wages that accurately specified the dates covered by payment, the rate of pay, and other information required by New York Labor Law § 195(3).

100.    As a result, Plaintiffs did not know how precisely their weekly pay was being calculated, and were thus deprived of information that could be used to challenge and prevent the theft of their wages.

101.    Defendants' misclassification of Plaintiffs and other clowns and entertainers as independent contractors, and their violations of the FLSA and the NYLL, were willful.

102.    Due to Defendants' misrepresentations to Plaintiffs and other clowns and entertainers of the nature of their services for the company, including through the misclassification of Plaintiffs and other clowns and entertainers, Plaintiffs and other clowns and entertainers were prevented from learning of and exercising their rights as employees under the FLSA. As a result,

the FLSA statute of limitations should be equitably tolled to allow Plaintiffs and other similarly-situated clowns and entertainers to recover for FLSA violations beginning on May 5, 2017.

103.     On the night of May 6, 2023, Ms. Pille was discussing Defendants' payment practices with another clown in a company car, while being driven home by a driver employed by Clowns.com.

104.     The other clown asked Ms. Pille whether the company's failing to provide paystubs to clowns was illegal.

105.     Ms. Pille responded that she believed that this failure to provide paystubs was illegal.

106.     Within thirty minutes of this conversation, Defendants terminated Ms. Pille's employment.

107.     As is apparent from the proximity in time between this comment and Ms. Pille's termination, Ms. Pille's termination was in retaliation for Ms. Pille's discussion with the other clown.

108.     With the onset of the COVID-19 pandemic, Ms. Salorio was understandably concerned about getting sick as, so she stopped working for Defendants to protect her health.

109.     Defendant Rodriguez did not believe COVID-19 was real and regularly sent Ms. Salorio Q-Anon videos regarding the pandemic. He was angry at Ms. Salorio for stopping her work with the company.

110.     Until that point, Ms. Salorio, who lived five minutes from Defendants' headquarters in Elmont, worked constantly for Defendants.

111.     Because Ms. Salorio lived so close to Defendants' headquarters, she was regularly called upon to fill in when other clowns were unable to work their shifts.

112.     Ms. Salorio found a new job in August 2020 working as a music teacher.

113.     Then, in approximately December 2020, Ms. Salorio received a call from her new boss at her music teacher job and was abruptly terminated.

114.     When Ms. Salorio asked her new boss why she was being terminated, her new boss explained that Defendant Rodriguez had called and stated that Ms. Salorio had caused Defendants "nothing but problems and drama."

115.     Ms. Salorio's last paycheck arrived on approximately December 22, 2020.

## COLLECTIVE ACTION ALLEGATIONS

116.     Plaintiff Angulo brings his FLSA claims, the First Cause of Action, as a collective action under 29 U.S.C. § 216(b) on behalf of himself and those individuals who may opt into the "FLSA Collective" defined as: "all current and former clowns and children's entertainers who worked for Defendants and were classified as independent contractors at any time from May 5, 2017 through the date of final judgment in this matter."

117.     The current and former employees described above are situated similarly to Plaintiff Angulo within the meaning of the FLSA, 29 U.S.C. § 216(b) and, therefore, the First Cause of Action herein may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA.

118.     Common proof applicable to Plaintiff Angulo and the other workers will show that Defendants failed to pay wages as required by the FLSA to Plaintiff Angulo and other workers.

119.     These causes of action are also maintainable as a collective action pursuant to the FLSA, 29 U.S.C. §216(b), because the prosecution of separate actions by individual members of the FLSA Collective would create a risk of inconsistent or varying adjudications with respect to individual current and former employees which would establish incompatible standards of conduct for Defendants.

120.    The names, last known addresses and cell phone numbers of the proposed FLSA Collective members are available to Defendants. Defendants therefore should be required to provide Plaintiffs a list – including names, last known addresses, cell phone numbers, and email addresses if known – of all current and former employees who would be members of the proposed FLSA Collective.

121.    Notice of and an opportunity to join this lawsuit should be provided to all potential opt-in Plaintiffs both by first class mail to their last known address and by workplace posting, as well as by other practicable means including but not limited to text messaging, as soon as possible.

**CLASS ACTION ALLEGATIONS ON BEHALF OF THE CLASS**

122.    Plaintiffs bring their NYLL claims, the Third through Sixth Causes of Action, on behalf of themselves and all other similarly situated individuals as a class action pursuant to Rules 23(a), (b)(1) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs assert claims on behalf of and seek to represent the follow Class: "All clowns and children's entertainers who worked for Defendants and were classified as independent contractors from May 5, 2017 through the date of final judgment in this matter."

123.    The start date of May 5, 2017 for the Class accounts for the past six years of the NYLL statute of limitations, plus an additional 228 days due to the Governor of New York's executive orders tolling New York statutes of limitations during the COVID-19 pandemic. *See, e.g.*, *McLaughlin v. Snowlift, Inc.*, 214 A.D.3d 720, 721 (2023).

124.    Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the class period has had a controlling interest in Clowns.com; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Class.

125.   Plaintiffs Angulo, Black, and Salorio also seek to represent a proposed subclass (the "Overtime Subclass") with respect to the Second Cause of Action under the NYLL, defined as follows: "All clowns and children's entertainers who worked for Defendants and were classified as independent contractors from May 5, 2017 through the date of final judgment in this matter, and who worked more than forty hours in at least one workweek."

126.   The proposed Class and Overtime Subclass are ascertainable in that their members can be identified and located using information contained in Defendants' payroll and personnel records.

*Numerosity*

127.   The Class and Overtime Subclass are so numerous that joinder of all class members is impracticable. Although the precise number of putative class members is currently unknown, Plaintiffs believe that the Class includes more than forty members, is at least sixty employees or former employees of Defendants, and may be as large as four hundred or more employees or former employees.

128.   Clowns.com maintains a LinkedIn profile that indicates Clowns.com was founded in 1996, that Clowns.com has 51-200 employees, and that there are 64 LinkedIn members who have listed Clowns.com as their current workplace on their LinkedIn profile.[1]

129.   Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Class and Overtime Subclass, but this information is readily ascertainable from Defendants' records. Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all

---

[1] *See* https://www.linkedin.com/company/clowns-inc/about/ (at "Company Size") (accessed Dec. 19, 2023).

individuals who worked as clowns and children's entertainers for Defendants from May 5, 2017 through the date this Complaint was filed.

*Existence and Predominance of Common Questions*

130.    Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members.

131.    These common questions include:

a)    Whether Defendants employed the clowns and children's entertainers within the meaning of the NYLL;

b)    Whether Defendants misclassified the clowns and children's entertainers as independent contractors;

c)    What are and were the policies, practices, programs, procedures, and protocols of Defendants regarding the compensation of the clowns and children's entertainers;

d)    Whether the clowns and children's entertainers were paid promised wages for all hours worked as required by the NYLL;

e)    Whether the clowns and children's entertainers were paid at least the minimum wage for all hours worked as required by the NYLL;

f)    Whether Defendants provided the clowns and children's entertainers with wages notices at hiring and accurate wage statements with every payment of wages as required by the NYLL;

g)    Whether Defendants' policy of failing to pay clowns and children's entertainers according to the NYLL was willful or with reckless regard of the law;

h)    As to the Overtime Subclass, whether the clowns and children's entertainers were paid overtime premiums for all hours worked over 40 in a workweek, as required by the NYLL; and

i)    The nature and extent of class-wide injury and the measure of damages for those injuries.

*Typicality*

132.    Members of the proposed Class and Overtime Subclass have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

133.    Plaintiffs and the other clowns and children's entertainers have the same statutory rights under the NYLL, and are all non-exempt employees within the meaning of the NYLL.

134.    Plaintiffs and the other clowns and children's entertainers suffered similar types of damages.

135.    Plaintiffs' claims are typical of the claims of the Class and the Overtime Subclass because, among other things, Plaintiffs were clowns/children's entertainers who worked for Defendants and suffered the same labor law violations as other clowns and children's entertainers.

136.    Plaintiffs' interests are co-extensive with the interests of the Class and the Overtime Subclass members; they have no interest adverse to the Class and the Overtime Subclass members.

137.    Defendants acted or refused to act on grounds generally applicable to the Class and the Overtime Subclass, therefore making final injunctive relief and declaratory relief appropriate as to the Class and the Overtime Subclass as a whole.

*Adequacy*

138.    Plaintiffs will fairly and adequately represent the interests of the Class and Overtime Subclass members. Their interests do not conflict with the interests of the members of the Class and Overtime Subclass they seek to represent.

139.    Plaintiffs understand that, as class representatives, they assume responsibilities to the Class and Overtime Subclass to represent its interests fairly and adequately.

140.    Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

*Superiority*

141.    A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

142.    The damages suffered by each individual Class and Overtime Subclass member may be limited.  Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct.

143.    Further, it would be difficult for members of the Class and the Overtime Subclass to effectively individually obtain redress for the wrongs done to them. If individual actions were to be brought by each member of the Class and Overtime Subclass, the result would be a multiplicity of actions, creating hardships for members of the Class and the Overtime Subclass, the Court, and the Defendants.

144.    Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the judicial system.

145.    By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

146.    This case does not present individualized factual or legal issues which would render a class action difficult.

147.    In the alternative, the Class and the Overtime Subclass may be certified because:

(a)    the prosecution of separate actions by the individual members of the Class and the Overtime Subclass would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b)    the prosecution of separate actions by individual Class and Overtime Subclass members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class and Overtime Subclass

members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)      Defendants have acted or refused to act on grounds generally applicable to the Class and Overtime Subclass, thereby making appropriate final and injunctive relief with respect to the members of the Class and Overtime Subclass as a whole.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act (Unpaid Overtime)**
**As to Plaintiff Angulo and the FLSA Collective**

148.      Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

149.      Plaintiff Angulo and other similarly-situated workers regularly worked more than 40 hours in a single work week.

150.      Defendants willfully failed to pay Plaintiff Angulo and the other similarly-situated clowns and entertainers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

151.      Defendants' failure to pay an overtime premium for all hours worked above 40 in a work week violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

152.      Plaintiff Angulo and other similarly-situated workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

153.      Plaintiff Angulo and other similarly-situated workers also seek, and are entitled to, attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Labor Law (Unpaid Overtime)
### As to Plaintiffs Angulo, Black, Salorio, and the Overtime Subclass

154.    Plaintiffs Angulo, Black, and Salorio, on behalf of themselves and the Overtime Subclass, reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

155.    Defendants willfully failed to pay Plaintiffs Angulo, Black, and Salorio and other similarly situated clowns and entertainers overtime pay at a rate of at least one-and-a-half times their regular hourly rate for every hour they worked above forty (40) hours in a single work week.

156.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

157.    Plaintiffs Angulo, Black, and Salorio and the Overtime Subclass are entitled to their unpaid wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198, 663, and 681.

158.    Plaintiffs Angulo, Black, and Salorio and the Overtime Subclass also seek, and are entitled to, attorneys' fees, costs, and interest.

## THIRD CAUSE OF ACTION
### New York Labor Law (Unpaid Promised Wages)
### As to Plaintiffs and the Class

159.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth therein.

160.    Defendants willfully failed to pay Plaintiffs and other similarly situated clowns and entertainers promised wages for all hours worked, in violation of NYLL § 193.

161.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, 681.

162.     Plaintiffs and the Class are therefore entitled to their unpaid wages as mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with NYLL §§ 198, 663, 681.

163.     Plaintiffs and the Class also seek, and are entitled to, attorneys' fees, costs, and interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law (Unpaid Minimum Wage)**
**As to Plaintiffs and the Class**

164.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth therein.

165.     Defendants willfully failed to pay Plaintiffs and other similarly situated clowns and entertainers at least the required state minimum wage for all hours worked, in violation of NYLL § 193.

166.     Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, 681.

167.     Plaintiffs and the Class are therefore entitled to their unpaid wages as mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with NYLL §§ 198, 663, 681.

168.     Plaintiffs and the Class also seek, and are entitled to, attorneys' fees, costs, and interest.

### FIFTH CAUSE OF ACTION
**New York Labor Law (Illegal Deductions)**
**As to Plaintiffs and the Class**

169.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference the foregoing allegations as if set forth fully here.

170.     Defendants routinely deducted $10 on Saturdays and $5 on Sundays from the pay of Plaintiffs and similarly situated clowns and entertainers.

171.     The pay deductions required by Defendants did not benefit Plaintiffs and the other Class members but were for the benefit of Defendants.

172.     The deductions were not permitted by statute and were not authorized in writing.

173.     The deductions were in violation of NYLL § 193.

174.     For Defendants' violation of NYLL § 193, Plaintiffs and the Class are entitled to damages in the amount of all improper deductions, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, 681.

175.     Plaintiffs and the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law (Wage Notice and Statement Violations)**
**As to Plaintiffs and the Class**

176.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

177.     Defendants failed to provide Plaintiffs and other similarly situated clowns and entertainers with wage notices at the time of hiring which provided all of the information required under NYLL § 195(1).

178.     Defendants failed to provide Plaintiffs and other similarly situated clowns and entertainers with accurate wage statements with every payment of wages which provided all of the information required under NYLL § 195(3).

179.    Because Defendants failed to comply with the statute's requirement to provide wage notices at the time of hiring, Plaintiffs and other similarly situated clowns and entertainers were not informed of their right to be paid minimum wages for all hours worked, and overtime wages for all hours worked over forty in a workweek, and thus the wage theft complained of here—Defendants' failure to pay minimum and overtime wages—was not prevented, and was allowed to persist.

180.    Because Defendants failed to comply with the statute's requirement to provide wage statements that accurately reflect all time worked, the wage theft complained of here—to wit, Defendants' failure to pay for all travel time—was not prevented, and was allowed to persist.

181.    Because the wage theft was not prevented, Plaintiffs and the Class were denied the opportunity to spend or invest their legally-owed wages.

182.    Because the statute's requirements were not followed, Plaintiffs and the NYLL class were delayed in learning about their legal right to be paid for all time worked and, as a result, delayed in acting on their legal right to recover stolen wages. As a result, at least some wage theft claims have been extinguished by the passage of the statute of limitations.

183.    For Defendants' violation of NYLL § 195(1), Plaintiffs and others similarly situated are entitled to $50 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-b).

184.    For Defendants' violation of NYLL § 195(3), Plaintiffs and others similarly situated are entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-d).

185.    Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

## SEVENTH CAUSE OF ACTION
### New York Labor Law (Illegal Retaliation)
### As to Plaintiff Pille

186.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

187.     Ms. Pille was terminated by Defendants within minutes of discussing her rights to be provided with proper paystubs with another employee—rights she reasonably believed were protected under state law.

188.     By retaliating against Ms. Pille, Defendants have violated NYLL § 215.

189.     Pursuant to NYLL § 215(2)(b), Ms. Pille, through her attorneys, has served notice of this action on the New York State Attorney General.

190.     Due to Defendants' illegal retaliation, under NYLL § 215(2), Ms. Pille is entitled to recover from Defendants compensatory damages, including lost compensation; liquidated damages; equitable relief; interest; costs of the action; and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
### Tortious Interference with Contract
### As to Plaintiff Salorio against Defendant Rodriguez

191.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

192.     Ms. Salorio was terminated by her new employer after Rodriguez told that employer that Ms. Salorio had created "nothing but problems and drama" for Clowns.com, which was inaccurate.

193.     In doing so, Rodriguez tortiously interfered with Ms. Salorio's employment contract.

194.     Rodriguez is accordingly liable to Ms. Salorio for all damages flowing from his tortious interference with her employment.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the Class, demand a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

(a) determining that this action may proceed as a collective action under 29 U.S.C. § 216(b);

(b) determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

(c) designating Plaintiff Angulo as a representative for the FLSA Collective and designating Plaintiffs' counsel as counsel for the FLSA Collective;

(d) designating Plaintiffs as representatives for the Class, Plaintiffs Angulo, Black, and Salorio as representatives for the Overtime Subclass, and designating Plaintiffs' counsel as counsel for the Class and the Overtime Subclass;

(e) issuing proper notice to the FLSA Collective and the Class at Defendants' expense;

(f) declaring that Defendants committed violations of the FLSA and the NYLL, and that Defendant Rodriguez tortiously interfered with Ms. Salorio's employment;

(g) permanently enjoining Defendants from further violations of the FLSA and the NYLL;

(h) awarding damages to Plaintiffs, the Class, and the Collective as provided by the FLSA and the NYLL;

(i) awarding Ms. Pille damages for illegal retaliation under NYLL;

(j) awarding Ms. Salorio damages as provided by New York common law;

(k) awarding reasonable attorneys' fees and costs as provided by law; and

(l) granting further relief, in law or equity, as this Court may deem appropriate and just, including all relief authorized by the FLSA and the NYLL.

DATED:      December 19, 2023
                New York, New York

**KAKALEC LAW PLLC**

Hugh Baran (he/him)
Patricia Kakalec (she/her)
Kakalec Law PLLC
80 Broad Street, Suite 703
New York, NY 10004
(212) 705-8730
Hugh@KakalecLaw.com
Patricia@KakalecLaw.com

*Attorneys for Plaintiffs*