UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRAYAN ANGULO, CAMERON
PILLE, JANINA SALORIO, and
XANDER BLACK, individually and
on behalf of all others similarly
situated,

                            Plaintiffs,                  23 Civ. 10983 (GS)

          -against-                                 **ORDER**

CLOWNS.COM, INC., ADOLPH
RODRIGUEZ a/k/a George
Rodriguez a/k/a George Adolph
Rodriguez a/k/a George Blackstone,
and ERICA BARBUTO,

                            Defendants.
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

On May 29, 2024, the parties reported that they had resolved the claims asserted in this action under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and requested that the Court dispense with the normal approval process for FLSA settlements in this Circuit. (Dkt. No. 50). In an Order dated July 23, 2024 (the "Order"), the Court denied that request and directed the parties to file a motion by August 13, 2024 seeking approval of the proposed FLSA settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Dkt. No. 51).[1]

---

[1] Familiarity with the Order is presumed. Certain defined terms used herein employ the same definitions used in the Order.

On July 31, 2024, Defendants filed a letter-motion seeking reconsideration of the Order or, in the alternative, requesting permission to file a motion to dismiss. (Dkt. No. 52). Plaintiffs filed a letter on August 8, 2024 opposing Defendants' motion (Dkt. No. 54), to which Defendants replied on August 9, 2024 (Dkt. No. 56). At Defendants' request, the Court stayed the August 13 deadline for submission of a *Cheeks* application pending resolution of Defendants' motion for reconsideration. (*See* Docket Entry dated August 9, 2024).

Defendants' motion for reconsideration is **DENIED**. As Plaintiffs correctly point out (Dkt. No. 54 at 1-2), Defendants have not satisfied the demanding standard governing motions for reconsideration. "The standard for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Tlacopilco v. Chater*, No. 16 Civ. 1254 (VSB), 2016 WL 11707086, at *1 (S.D.N.Y. July 21, 2016) (denying reconsideration of order rejecting parties' argument that *Cheeks* review was unnecessary) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Defendants have presented no such controlling decisions or factual information in their motion for reconsideration.[2]

---

[2] Defendants contend that they should not be held to the usual standard governing motions for reconsideration because "Plaintiffs, not Defendants, submitted the [May 29, 2024] letter request." (Dkt. No. 56 at 1). But while on the letterhead of Plaintiffs' counsel, the May 29 letter was expressly submitted "jointly with counsel for Defendants" (Dkt. No. 50 at 1) and included a paragraph setting forth "Defendants' position" as to the very issue which Defendants seek to relitigate now (*id.* at 2). Defendants do not contend that Plaintiffs placed any restrictions on their ability to articulate that argument as Defendants saw fit or to cite whatever case authority Defendants wished to cite.

But the motion fails on the merits as well.  The crux of Defendants' argument is that the parties' resolution of Plaintiffs' FLSA claims—reached after an all-day mediation and memorialized in a written agreement signed by all parties—is "not a settlement" at all; instead, it is a "satisfaction" of the FLSA claims.  (Dkt. No. 52 at 1; *see also* Dkt. No. 50 at 1; Dkt. No. 52 at 3 ("this is a satisfaction case and not a settlement case")).  The facts before the Court belie this characterization.

The parties' written agreement, though denominated an "FLSA Satisfaction Agreement," bears all the hallmarks of a settlement agreement.  (Dkt. 52 at First Attachment ("Agreement")).  It contains, *inter alia*, the following provisions:

- several "whereas" clauses reciting the background to the Agreement (*id.* at 1-2);

- a recital that both parties have "mutual[ly]" provided "consideration" for the Agreement (*id.* at 2);

- agreed-upon amounts to be paid to the FLSA Plaintiffs within five days of Court action (*id.* ¶ 1);

- the FLSA Plaintiffs' release of their FLSA claims (*id.* ¶ 3);

- both parties' covenant not to sue (*id.* ¶ 5);

- a statement that Defendants do not admit liability and maintain their position that Plaintiffs are not covered by the FLSA (*id.* ¶ 4);

- a requirement that Plaintiffs file a Stipulation of Dismissal, attached to the Agreement, within three days of the payments (*id.* ¶ 6);

- a provision that the Agreement is not binding unless and until the Court so-orders the Stipulation of Dismissal and/or approves the Agreement (*id.* ¶ 7);

- a severability clause (*id.* ¶ 12); and

3

- provisions addressing what happens if the Agreement is breached (*id.* ¶¶ 11, 14).

These are terms that are customarily found in settlement agreements in FLSA (and non-FSLA) cases. Whatever its title, the Agreement is, in substance, a settlement agreement.

Moreover, the Agreement does not stand alone. The "satisfaction" of Plaintiffs' FLSA claims was negotiated simultaneously with the parties' resolution of Plaintiffs' state law claims, which the parties themselves describe as a "settlement." (Dkt. No. 50 at 2). The Agreement notes that the FLSA claims were resolved "as part of" the same mediation that resulted in a separate agreement "to settle the state law claims asserted in the Action." (Agreement at 2). Thus, the resolution of the FLSA claims was part of a single, integrated settlement of all the claims asserted in this action.

"In the context of litigation . . . the word 'settlement' is generally and customarily used to mean '[a]n agreement ending a dispute or lawsuit.'" *Hammer v. RDR Books*, No. 10 Civ. 1007 (CM), 2011 WL 4388849, at *5 (S.D.N.Y. Sept. 20, 2011) (quoting Black's Law Dictionary 1377 (7th ed.)); *see also Hage v. General Serv. Bureau*, 306 F. Supp. 2d 883, 889 (D. Neb. 2003) ("A settlement is a negotiated agreement ending a dispute."). That is precisely what the "FLSA Satisfaction Agreement" is: an agreement negotiated by the parties to end this lawsuit. The record thus shows that the parties have, in fact, agreed to settle the FLSA Plaintiffs' claims. *See, e.g., Hammer*, 2011 WL 4388849, at *5 ("In this case, the oral Publishing Agreement ended both 'the dispute' and 'the lawsuit' between the

4

parties. As far as this court is concerned, it can only be described as a 'settlement.'"); *Norris v. Bluestem Brands, Inc.*, No. 16-cv-3954 (ECT/TNL), 2019 WL 1767408, at *6 (D. Minn. Apr. 22, 2019) (requiring judicial review of nontraditional resolution of FLSA claims and relying on definition of "settlement" as "[a]n agreement ending a dispute or lawsuit").

Defendants reiterate their position that because Plaintiffs' FLSA claims are allegedly being completely satisfied, there is no longer a live controversy between the parties and, thus, the Court lacks jurisdiction to conduct a *Cheeks* review. (Dkt. No. 52 at 1). In rejecting that argument, the Order relied extensively on the Second Circuit's decision in *Samake v. Thunder Lube, Inc.*, 24 F.4th 804 (2d Cir. 2022). Among other things, the Court noted that the parties seek dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and the Second Circuit has "held that *any* [FLSA] settlement *must be reviewed* by the district court for compliance with that Act before the parties may dismiss a case with prejudice by joint stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii)." (Order at 2-3 (quoting *Samake*, 24 F.4th at 807)). The Court also noted that *Samake* held that "the district court properly retained jurisdiction to conduct a *Cheeks* review" even where there was no reported settlement and the plaintiff filed a voluntary dismissal pursuant to Rule 41(a)(1)(A)(i). (*Id.* at 7 (quoting *Samake*, 24 F.4th at 809)). Yet Defendants' reconsideration motion does not address *Samake* at all, let alone explain why the Court should depart from Circuit precedent.

5

As authority for their position, Defendants rely on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). (Dkt. No. 52 at 2-3). But that case only undermines their position. In *Campbell-Ewald*, the Supreme Court *rejected* the defendant's contention that the case was moot because the defendant had made an offer under Rule 68 to fully satisfy plaintiff's claim. *Id*. at 160-66. In reaching that conclusion, the Supreme Court noted that because the plaintiff had not accepted defendant's offer of judgment, his claim "stood wholly unsatisfied" and thus his claim was not made moot by defendant's offer. *Id*. at 165. The court distinguished earlier cases in which railroad defendants effectively extinguished government tax claims by "deposit[ing] the full amount demanded" in a government bank account or "actual[ly] pay[ing]" the taxes sought. *Id*. at 163-64.

Here, Defendants have made no payment to Plaintiffs and are unwilling to do so without strings attached. While Defendants have *agreed* to make payments to the FLSA Plaintiffs, that agreement is subject to the terms and conditions in the Agreement, including Plaintiffs' release of their FLSA claims as well as their acknowledgment that such payments shall not be construed as an admission of liability. (Agreement ¶¶ 3-5). Further, the Agreement, by its terms, is "not binding unless and until the Court" either so-orders the parties' proposed Stipulation of Dismissal or approves the Agreement. (*Id*. ¶ 7). Neither event has occurred, and the Court has determined that the parties' settlement of the FLSA claims is subject to court approval. This action thus remains a live controversy and it is not moot.

6

(*See* Order at 6 (citing cases for proposition that case or controversy still exists when a settlement has been reached subject to court approval)).[3]

There is more than a little irony in Defendants' reliance on *Campbell-Ewald*. Defendants could have obviated the need for *Cheeks* review if they (like the *Campbell-Ewald* defendant) had made an offer of judgment and Plaintiffs had accepted that offer. The Second Circuit has squarely held that when an FLSA claim is resolved by means of a Rule 68 offer of judgment, rather than pursuant to a stipulated dismissal under Rule 41(a)(1)(A)(ii) as is proposed here, judicial approval pursuant to *Cheeks* is not required. *Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395 (2d Cir. 2019). Yet Defendants have chosen not to proceed by means of a Rule 68 offer of judgment, even though they say they are willing to pay the FLSA Plaintiffs the full amount sought and even though "Rule 68 does not require that offers of judgment include admissions of liability." *Perez-White v. Advanced Dermatology of N.Y. P.C.*, No. 15 Civ. 4858 (PGG), 2016 WL 4681221, at *6 (S.D.N.Y. Sept. 7, 2016) (citation omitted).

Finally, Defendants argue that because the Agreement provides for full recovery on the FLSA claims and includes no unfavorable non-economic terms, "*Cheeks* is inapplicable." (Dkt. No. 52 at 3). This argument confuses the need for a *Cheeks* review with the substantive outcome of a *Cheeks* review. If the economic

---

[3] Because Plaintiffs have so far received nothing and will not receive anything unless and until the Court approves the FLSA settlement, Defendants likewise err in relying on *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1162 (6th Cir. 2023) ("*Once the plaintiffs have received all they sought*, they no longer possess the 'personal stake' in the outcome of a lawsuit necessary to maintain standing.") (emphasis added) (quoting *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023)).

7

and non-economic terms of an FLSA settlement are fair and reasonable, the settlement would satisfy the requirements of *Cheeks*. It would not be *immune* from the requirements of *Cheeks*.

As previously explained in the Order, the Court is not yet able to conclude either that the FLSA Plaintiffs are receiving 100% recovery on their claims or that they are not being subjected to overbroad non-economic terms. (Order at 3-5). Defendants' motion for reconsideration does not obviate those concerns. Defendants acknowledge they do not know, and did not even discuss with Plaintiffs' counsel, how the FLSA payments were calculated. (Dkt. No. 52 at 4). And because Defendants resist providing the Court with the parties' settlement agreement pertaining to the NYLL and other state law claims, the Court "cannot determine whether the agreement contains other conditions relating to or otherwise affecting the FLSA claims that would be impermissible if executed in an FLSA settlement agreement." *Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018).

Accordingly, the Court adheres to its prior determination that the parties must file a motion for approval of the proposed settlement of Plaintiffs' FLSA claims pursuant to *Cheeks* and, in so doing, provide a copy of the settlement agreement concerning the state law claims (described in the Agreement as the "Non-FLSA Settlement Agreement"). (*See* Agreement at 2). To be clear, as Judge Nathan explained in a similar circumstance, "the Court need not and will not separately approve the fairness of the settlement of [Plaintiffs' non-FLSA] claims. Rather, the Court must assure itself that [Plaintiffs are] settling [their] FLSA claims in a

8

manner that comports with the requirements of *Cheeks*." *Banegas v. Mirador Corp.*, No. 14 Civ. 8491 (AJN), 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016).[4]

The Court denies Defendants' alternative request for leave to file a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). Defendants state that this motion would be "based on the same facts, circumstances, and legal authority upon which this motion for reconsideration is based." (Dkt. No. 52 at 5). For the reasons described above and in the Order, such a motion to dismiss would be devoid of merit. Further, if the Court decides to approve the settlement of the FLSA claims, the motion would be unnecessary.

In this regard, the Court emphasizes that nothing said herein or in the Order should be understood as expressing any opinion on the merits of whether *Cheeks* approval is warranted in this case. While the Court believes it needs to review the Non-FLSA Settlement Agreement as context to determine if the FLSA settlement is fair and reasonable, it recognizes that parties are free to resolve non-FLSA claims on terms that would be impermissible in the FLSA context. Thus, the inclusion of such terms in the Non-FLSA Settlement Agreement (*e.g.*, a release that would be broader than *Cheeks* permits for FLSA settlements) would not necessarily undermine the FLSA settlement.

---

[4] Recognizing that the settlement of non-FSLA claims is not itself subject to *Cheeks* and that the presumption of public access that attaches to an FLSA settlement agreement, *see, e.g.*, *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 337-38 (S.D.N.Y. 2012), does not apply to an agreement settling non-FLSA claims, the Court will permit the parties to file the Non-FLSA Settlement Agreement under seal and to redact any references thereto in their motion for *Cheeks* approval.

The parties shall submit the application for Cheeks approval by no later than **Wednesday, September 18, 2024**.

The Clerk of Court is respectfully directed to close Defendants' motion pending at Docket No. 52.

**SO ORDERED.**

DATED:   New York, New York
         September 4, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge