

Patricia Kakalec
Patricia@KakalecLaw.com

September 18, 2024

<u>By ECF</u>

Hon. Gary Stein
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

   <u>Re</u>:  *Angulo, et al. v. Clowns.com, Inc., et al.*, No. 23-cv-10983 (GS)

Dear Judge Stein:

   Our office represents Plaintiffs Brayan Angulo, Cameron Pille, Janina Salorio, and Xander Black, and opt-in Plaintiffs Miles Sullivan, Cara Stofa, Yasmine Elabd, Matthew Tierney, Will Pierson, Lia Hauser, Grayson Hampshire, and Isabella Marinucci in the above-referenced matter.  We submit this letter motion together with Defendants in compliance with the Court's September 4, 2024 Order, ECF No. 57, seeking the Court's approval of the parties' Fair Labor Standards Act ("FLSA") agreement under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).

   The FLSA agreement is attached hereto as Exhibit 1 (the "FLSA Agreement").  In addition, and in accordance with the Court's September 4th Order, ECF No. 57 at 9 FN 4, Plaintiffs are also submitting their separate agreement (the "NYLL Agreement") on their New York Labor Law claims and one individual state common law claim for the Court's review under seal.

<u>Background</u>

*Plaintiffs' Claims*

   This case was filed on December 19, 2023 by clowns and children's entertainers who worked for Defendants Clowns.com, Inc., Adolph Rodriguez, and Erica Barbuto ("Defendants") providing entertainment services at parties throughout the New York area.  While these clowns and entertainers were classified as independent contractors by Defendants and were paid accordingly, Plaintiffs in this case alleged that in reality, they were employees rather than independent contractors.  As a result of having been treated as independent contractors rather than employees, the clowns and entertainers allege that they were not paid overtime for all of their hours worked over 40 in a workweek, and that they were not lawfully paid for all of their work time — including travel time and other non-party work time. The Complaint in this action specifically alleged the following claims arising out of the Defendants' alleged misclassification of the clowns and entertainers as independent contractors and pay practices:

Kakalec Law PLLC
80 Broad Street, Suite 703, New York, NY 10004
(212) 705-8730; (646) 759-1587 (fax)
www.KakalecLaw.com

(1) Failure to pay overtime as required by the Fair Labor Standards Act (as to Plaintiff Angulo and a proposed FLSA Collective);

(2) Failure to pay overtime as required by New York Labor Law ("NYLL") (as to Plaintiffs Angulo, Black, Salorio and the Overtime Subclass);

(3) Failure to pay promised wages under New York Labor Law (as to Plaintiffs and the Class);

(4) Failure to pay minimum wages for all hours worked under New York Labor Law (as to Plaintiffs and the Class);

(5) Illegal pay deductions under the New York Labor Law (as to Plaintiffs and the Class)

(6) Hiring notice and wage statement violations under New York Labor Law (as to Plaintiffs and the Class);

(7) Illegal retaliation under the New York Labor Law (as to Plaintiff Pille); and

(8) Tortious interference with contract (as to Plaintiff Salorio).

Plaintiff Angulo asserted the Court could exercise federal jurisdiction over the FLSA claims, and all four Plaintiffs asserted the Court could exercise supplemental jurisdiction over their NYLL claims. In addition, Plaintiffs Salorio and Pille asserted the Court could exercise supplemental jurisdiction over their individual claims under state law (Nos. 7 & 8 above).

Defendants have taken the position that the plaintiffs are independent contractors, not employees, and therefore are not covered by the FLSA or the NYLL.

*Procedural History & Background on Settlement Negotiations*

The case was originally assigned to U.S. District Judge Analisa Torres.  In the weeks after the case was filed, eight additional plaintiffs joined the case as FLSA opt-in plaintiffs. ECF Nos. 17–21, 26–28.

On January 29, 2024, Defendants appeared in the case through counsel Mohammed Gangat.

On February 14, 2024, new counsel for Defendants, Richard Reibstein, appeared in the case.  Shortly thereafter, the parties agreed to pursue private mediation and sought an extension of case deadlines in aid of mediation, which extension Judge Torres granted.  Thereafter, the Defendants shared with Plaintiffs a substantial amount of information about the Plaintiffs' scheduled hours and amounts of pay, which Plaintiffs could use in assessing their overtime.

The named Plaintiffs, Plaintiffs' counsel, Defendants, and Defendants' counsel all participated in an all-day mediation with Mediator Barry Peek on April 1, 2024. The parties did not resolve all matters on that day, but did conclude that it would not be possible to resolve the claims on behalf of the entire proposed New York Labor Law class.  As a result, the parties began negotiations toward a resolution on behalf of the named Plaintiffs and current opt-in Plaintiffs. The current opt-in Plaintiffs were kept apprised of and consulted throughout the negotiations.

After several weeks of further negotiations with the aid of the Mediator, the parties entered into a term sheet, which outlined an agreed-to resolution of all of the named Plaintiffs and opt-in Plaintiffs' claims.  On April 25, 2024, following execution of the Term Sheet, the parties advised Judge Torres of the resolution and term sheet, and requested a deadline of May 2, 2024 to submit appropriate paperwork to the Court. ECF No. 46, which request was granted.

On May 13, 2024, the parties submitted a notice of consent to the jurisdiction of Your Honor for all further proceedings, which was so-ordered by Judge Torres the following day. ECF Nos. 48-49.  After several weeks of finalizing the terms of the parties' resolution of all claims, the parties, on May 29, 2024, signed the FLSA Agreement and the NYLL  Agreement.

On May 31, 2024, the parties submitted a joint letter and proposed stipulation to the Court, in accordance with their Agreements.  On July 23, 2024, the Court entered an Order, ECF No. 51, directing the parties to submit their FLSA Agreement for Court approval. The Court also directed the parties to submit the NYLL Agreement.  Defendants moved for reconsideration of this Order, which application was denied.  ECF No. 57.  This application follows.

<u>FLSA Agreement Terms</u>

Under the terms of the "FLSA Satisfaction Agreement," Defendants have agreed to make a total payment of $9,164.07 to fully satisfy the FLSA Plaintiffs' unpaid overtime claims, including liquidated damages that is available under the FLSA. Specifically, they are to make payments of the following amounts to the nine FLSA Plaintiffs:

| Recipient | FLSA Satisfaction Payment |
|---|---|
| Brayan Angulo | $1,391.25 |
| Miles Sullivan | $480 |
| Matt Tierney | $1080 |
| Yasmine Elabd | $810 |
| Cara Stofa | $540 |
| Will Pierson | $360 |
| Lia Hauser | $900 |
| Izzy Marinucci | $450 |
| Grayson Hampshire | $1,320 |

Ex. 1 ¶ 1.  In addition, Defendants have agreed to make a payment of attorneys' fees and costs associated with the FLSA claims in a total amount of $1,832.82.  *Id.*  The FLSA Satisfaction Agreement does not include a confidentiality provision, a non-disparagement provision, or other provisions that have drawn scrutiny from courts in this Circuit under *Cheeks*.[1]

---

[1] Three of the 12 plaintiffs do not have any FLSA or other federal claims.

The FLSA Agreement also includes the nine FLSA Plaintiffs' releases of their FLSA claims only. Specifically, "the FLSA Plaintiffs knowingly and voluntarily release and forever discharge the Defendants from any claims for wages, liquidated damages, attorneys' fees and costs, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq, and its implementing regulations." Ex. 1, ¶ 3. This release of only FLSA claims is in line with the limited releases that are permitted in this Circuit. *See, e.g.*, *Bondi v. Defalco*, No. 17-CV-5681 (KMK), 2020 WL 2476006, at *5 (S.D.N.Y. May 13, 2020) (approving similarly narrow release and noting that "courts have held that in a FLSA settlement, the release must generally be limited only to wage and hour claims.") (citations omitted); *Amaro v. Barbuto, LLC*, No. 16-CV-1581 (AJN), 2017 WL 476730, at *1 n.1 (S.D.N.Y. Feb. 2, 2017) ("The Court notes that the release, which pertains only to wage and hour claims, is sufficiently narrow to be permissible.") (citations omitted); *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-931 (EK)(PK), 2022 WL 1063864, at *2 (E.D.N.Y. Feb. 7, 2022) (finding release "appropriately limited to wage and hour claims"), *report and recommendation adopted*, 2022 WL 1062316 (E.D.N.Y. Apr. 7, 2022).

The terms and conditions reflected in the written FLSA Agreement represent a full and complete satisfaction of the *bona fide* dispute here as to whether Defendants had an obligation to pay the FLSA Plaintiffs any overtime premiums as independent contractors or whether Defendants failed to comply with the law to pay the FLSA Plaintiffs overtime premiums as employees. For both the FLSA Plaintiffs and Defendants, the certainty of the FLSA payments to be made here, which represent a full payment of the FLSA Plaintiffs' unpaid overtime, was far better than the uncertain outcome of costly and protracted continued litigation—particularly in light of the relatively small size of the FLSA claims in this case. For these reasons, the parties seek the Court's approval of the FLSA Agreement.[2]

<u>Cheeks Analysis of the FLSA Agreement</u>

As the Court is aware, an examination of whether an agreement is fair and reasonable under *Cheeks* involves consideration of "(1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (cleaned up).

These issues are addressed below.

*Range of possible recovery*: Under Plaintiffs' calculations, the maximum amount of unpaid overtime the FLSA Plaintiffs would be entitled to if they prevailed on all aspects of their FLSA claims is approximately $3,665.63 in unpaid wages, plus an equal amount in liquidated damages. Plaintiffs also would be entitled to attorneys' fees and costs as to their FLSA claims.

---

[2] Defendants wish to add that nothing in this letter motion should be construed as a waiver of their position that the FLSA claims in this case have been mooted and, as a result, there is no longer any case or controversy over which the Court has jurisdiction.

These amounts are relatively low because the primary work of the clowns and entertainers was performed on weekends; they did not usually work more than 40 hours in a workweek. As such, the bulk of Plaintiffs' claims in this case are for unpaid travel time on weekends, under the New York Labor Law – a different theory of recovery that is not available under the FLSA, which only provides for unpaid minimum wages[3] and overtime. The nine Plaintiffs who have FLSA claims are those who also worked some weekday shifts, resulting in a few weeks that they claimed that they worked more than 40 hours in a workweek.

These amounts were calculated primarily based on the FLSA Plaintiffs' own recollections of weekday overtime hours worked in the three years prior to their opting into this case. Based on those recollections, they were calculated as follows, with an equal amount of liquidated damages added to the total amount of each FLSA Plaintiff's claims:

| Plaintiff | Total Hours OT | Regular Rate | Approx. OT Owed | Liq Damages | Approx Value of FLSA Claim |
|---|---|---|---|---|---|
| Brayan Angulo | 13.25 | $35 | $695.625 | $695.625 | $1391.25 |
| Miles Sullivan | 4 | $40 | $240 | $240 | $480 |
| Matt Tierney | 12 | $30 | $540 | $540 | $1080 |
| Yasmine Elabd | 9 | $30 | $405 | $405 | $810 |
| Cara Stofa | 6 | $30 | $270 | $270 | $540 |
| Will Pierson | 4 | $30 | $180 | $180 | $360 |
| Lia Hauser | 12 | $25 | $450 | $450 | $900 |
| Izzy Marinucci | 6 | $25 | $225 | $225 | $450 |
| Grayson Hampshire | 16 | $27.5 | $660 | $660 | 41320 |
| | | TOTALS | $3665.625 | $3665.625 | $7331.25 |

On top of this, Plaintiffs' counsel estimated attorneys' fees and costs associated with this recovery in the amount of $1,832.00, approximately 25% of the FLSA damages. This amount is not being deducted from any amounts owed to the FLSA Plaintiffs under the FLSA; rather, it is added on top of the FLSA Plaintiffs' recovery.

Were this action to go forward, Defendants would be expected to contest not only that Plaintiffs worked these numbers of overtime hours, and to take the position that they bear no liability for Plaintiffs' unpaid wages, liquidated damages, or penalties because, as noted above, Defendants contend that all of the Plaintiffs were *bona fide* independent contractors, and therefore that they are not liable for FLSA violations. If a jury found that Plaintiffs were in fact independent contractors, Plaintiffs would recover nothing from Defendants. While Plaintiffs are confident that they meet standards to be considered employees, given the risk of not receiving

---

[3] Plaintiffs do not contend that the travel time resulted in pay below the federal minimum wage of $7.25 per hour.

any recovery from Defendants, and given the reality that the FLSA payments fully satisfy the amounts owed to the FLSA Plaintiffs for overtime, Plaintiffs believe that the FLSA agreement payments are a full and fair resolution of their claims. Given that Plaintiffs will receive the 100% amount of their unpaid overtime wages and liquidated damages for that overtime, the parties contend that the FLSA agreement is presumptively reasonable.

The $1,832 attributed to costs and attorneys' fees is also fair and reasonable. Plaintiffs' counsel advanced costs including $400 for the filing fee; $164.60 for service of process; and $166.67 as part of the deposit paid to the Mediator.

As to attorneys' fees, Plaintiffs agreed, upon retaining Plaintiffs' counsel, that counsel may receive the greater of 1/3 of the full settlement amount negotiated or counsel's lodestar, after costs advanced by counsel.[4] The fees and costs noted above are less than this 1/3 and is significantly below counsel's lodestar spent to date in this action (which we recognize also includes time spent on the NYLL settlement.) Plaintiffs' counsel's work in this case has included interviewing the Plaintiffs and meeting with the Plaintiffs at length and on multiple occasions; investigating the identities of each Defendant; drafting the Complaint; preparing damage calculations; filing a pre-motion letter for conditional certification; preparing for and attending the mediation; holding weeks of further settlement discussions, preparing and revising the Settlement Agreements; addressing the Court's Orders regarding approval of the agreement; and preparing this submission.

*Avoiding burdens/expenses and litigation risk*: In Plaintiffs' estimation, a risk this resolution minimizes is the risk that a jury does not find that Plaintiffs were in fact employees, and therefore concludes Defendants are not responsible for any FLSA damages. The certainty of a prompt initial payment after approval weighs in favor of approving this resolution by the parties. Given the potential of one or more years involved with a trial and possible post-trial motions, a prompt resolution here was a significant factor in the nine workers' joint decision to accept the FLSA agreement.

As to the burden of proceeding, all parties are motivated to avoid the burden and expense should this case proceed to trial. If this case were to move forward, Plaintiffs would have had to engage in discovery and extensive motion practice as well as pre-trial preparation.

Finally, we note that a major factor in Plaintiffs' determination to resolve this case on the terms set forth in the FLSA Agreement relates to the concern Plaintiffs have about the financial wherewithal of the corporate and individual Defendants. Information concerning Defendants' finances was disclosed in the course of settlement discussions and evaluated by all parties in considering whether to accept a settlement.

---

[4] While Plaintiffs' counsel ordinarily submit detailed time records with *Cheeks* applications, in this case given the small amount of attorneys' fees sought in the FLSA settlement, and considering that the fees sought to be approved for the FLSA Agreement are less than the one third percentage Plaintiffs agreed to upon retaining us, we have not submitted counsel's affidavits and time sheets. Should the Court require this additional information, the Plaintiffs will submit.

In sum, weighing the benefit of a fast, meaningful amount paid to Plaintiffs against the risks and burdens associated with proceeding with a lengthy litigation, the settlement here is reasonable.

*Arms-length bargaining/risk of fraud*: The parties in this case reached a settlement after a Mediation with Mr. Peek and subsequent settlement discussions facilitated by the Mediator. The settlement discussions were arm's length, involved no fraud or collusion, and involved counsel experienced in wage and hour matters on both sides.

*Other factors*: Plaintiffs' counsel believes, based on the information disclosed in the course of mediation, that it is unlikely that there are more than a handful at most of other similarly situated clowns and entertainers who would have significant FLSA overtime claims. For those that may, this settlement would not prevent them from pursuing any such claims.

In sum, for all of these reasons, the parties submit that the FLSA Agreement here is fair and reasonable, and Plaintiffs ask that it be approved by the Court.

<u>New York Labor Law Agreement</u>

As noted above, this case also included significant claims under New York Labor Law. In its September 4th Order, the Court stated that it needs to assure itself that Plaintiffs are settling their FLSA claims in a manner that comports with the requirements of *Cheeks*.







████████████████████████████████████████████████

\* \* \*

For all these reasons, the parties urge the Court to approve the FLSA Agreement as fair and reasonable and to enter the proposed Order previously submitted by the parties, calling for the dismissal of the FLSA claims with prejudice and dismissal of the NYLL claims without prejudice ███████████████████████████████████████

We thank the Court for its consideration of this submission.

Respectfully submitted,



Patricia Kakalec
Counsel for Plaintiffs

cc:    All counsel via ECF

████████████████████████████████████████████████